## McNEILAB, INC.

### v.

### BRISTOL–MYERS COMPANY.

#### No. 86–4163.

United States District Court,
E.D. Pennsylvania.

Sept. 5, 1986.

As Amended Sept. 12, 1986.

M. Kelly Tillery, Leonard, Tillery & Davison, Philadelphia, Pa., for McNeilab, Inc.

Kenneth A. Plevan, Skadden, Arps, Slate, Meagher & Flom, New York City, for Bristol-Myers Co.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

The complaint filed herein alleges that plaintiff has been and continues to be injured by a false and deceptive advertisement authorized by defendant in marketing its over-the-counter drug Nuprin. Plaintiff contends that defendant's advertisement vi-

olates Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a) (1982) ("the Lanham Act"), and common law proscriptions against unfair competition. This court has jurisdiction, as asserted, pursuant to 28 U.S.C. § 1338(a) and (b). Trial of all facts was to the court, without a jury.[1]

Plaintiff, McNeilab, Inc., ("McNeilab"), is the manufacturer of over-the-counter drug Tylenol, a non-aspirin analgesic which contains as its active ingredient acetaminophen. Tylenol is used for the temporary relief of mild to moderate pain and fever; it offers substantially the same benefits as aspirin, but without aspirin's side effects. Regular Strength Tylenol tablets contain 325 mg. of acetaminophen. Extra Strength Tylenol tablets and "caplets" contain 500 mg. of acetaminophen.

Defendant, Bristol-Myers Company, pursuant to a license from the Upjohn Company, sells an over-the-counter analgesic under the name Nuprin. Two hundred milligrams of Ibuprofen is the active ingredient contained in a Nuprin tablet. Upjohn also sells Ibuprofen as a prescription analgesic under the name Motrin.

Ibuprofen belongs to a class of drugs known as non-steroidal, anti-inflammatory drugs and has been available on an over-the-counter basis only since the summer of 1984. Certain side effects are attributed to both Ibuprofen and Acetaminophen. The United States Food and Drug Administration ("FDA") requires the 200 mg. tablets of Ibuprofen sold as Nuprin by Bristol-Myers and as Advil by American Home Products ("AHP") to state a dosing regimen on all labels and packages of the products as follows:

*Directions.* Adults: Take one tablet every 4 to 6 hours while symptoms persist. If pain or fever does not respond to 1 tablet, 2 tablets may be used but do not exceed 6 tablets in 24 hours, unless directed by a doctor. The smallest effective dose should be used.

Plaintiff seeks to enjoin allegedly false and deceptive television commercials and print media advertisements for Nuprin and to recover attorneys fees and costs. The commercial, entitled "Amphitheater", shows a medical reporter announcing that a new medical study demonstrates that Nuprin provides greater pain relief than either regular-strength aspirin or Extra-Strength Tylenol. The statement is made,

MEDICAL NEWS FROM NUPRIN

Moments ago a medical study reported the best news for tough headaches in over ten years. Beyond regular strength aspirin, beyond Extra-Strength Tylenol, there's a higher level of pain relieving strength, Nuprin Strength.

Two little Nuprin are stronger than Extra-Strength Tylenol. So Nuprin stops headaches better, and remember, Nuprin is gentler to your stomach than aspirin. For strength beyond Extra Strength Tylenol. Nuprin Strength.

Superimposed at the bottom of the television screen, when reference is made to "Two little Nuprin", is the message: "Use only as directed. Take one Nuprin tablet. Two tablets may be used if pain does not respond."

Paragraph 20 of the complaint states: Even if the medical study referred to in the commercial was properly designed and controlled, and even if Bristol's characterization of its findings is literally correct, the commercial is nevertheless false and misleading in the following respects: (a) The commercial falsely implies that two tablets is the standard, or recommended, dosage for NUPRIN; (b) The commercial falsely implies that the standard, or recommended, dose of NUPRIN is more effective than Extra-Strength TYLENOL; and (c) The commercial falsely implies that a medical study has established that the standard, or recommended, dose of NUPRIN is more effective than Extra-Strength TYLENOL.

Thus, plaintiff contends that by focusing on the findings of a medical study that involved the administration of 400 mg. of Nuprin, the commercial falsely implies that

---

1. This memorandum constitutes the court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

400 mg. (two 200 mg. tablets) is the standard or recommended Nuprin dosage. McNeilab also contends that one 200 mg. Nuprin tablet is the only authorized first dose and one tablet is merely equipotent and not superior to Extra-Strength Tylenol. Initially, McNeilab challenged the accuracy of the clinical study. However, at trial it offered no evidence to prove the falsity of the clinical study claim.

On final argument, counsel for plaintiff conceded for the purpose of this litigation the truth of the claim of defendant that two little Nuprin are stronger than Extra Strength Tylenol.[2] Thus, plaintiff can prevail only if an ambiguity in the message communicates to the consumer an implied message that is false or misleading. Where such an ambiguity exists the trial court properly considers evidence of reactions of the public to the advertisement because "[s]ection 43(a) of the Lanham Act encompasses more than literal falsehoods." *American Home Products Corp. v. Johnson and Johnson,* 577 F.2d 160 (2nd Cir. 1978); *McNeilab, Inc. v. American Home Products Corporation,* 501 F.Supp. 517 (S.D.N.Y.1980).

A message claimed by plaintiff to be implicit in the advertisement is that Nuprin strength is superior to the standard two tablet dose of Extra Strength Tylenol, even when the Nuprin dose is one and not two tablets. In other words, the message is said to be that of a general superiority of Nuprin over Extra Strength Tylenol. If such a message is implicit in the commercial it is false as defendant concedes that a one tablet dose of Nuprin is at best equipotent with the standard dose of Extra Strength Tylenol.

Plaintiff relies upon a survey it commissioned Oxtoby-Smith, Inc. to conduct to determine consumer reaction to the television commercial. The interview sample consists of 297 persons who had used an over-the-counter analgesic within the month. The interviews were conducted in five cities across the nation. Each interviewee was shown the commercial twice and then asked questions about it. Responses were recorded by the interviewer. The raw data, and a report which describes the survey procedure and analyzes the results are in evidence.

79.5% of the persons interviewed responded to an open-ended question that the main idea of the commercial was to compare Nuprin with other products in efficiency. In response to a second question, whether the commercial attempted to get anything else across, 91.9% said it stated Nuprin was superior to other analgesics including 63.3% who stated that the commercial tried to get across that Nuprin was better, stronger and more effective than Tylenol. Four percent responded that it stated two Nuprin were better than other analgesics and 3% said the commercial was trying to get across that two Nuprin were superior to Tylenol/Extra Strength Tylenol.

Plaintiff's expert witness, the designer of the survey, testified that in his opinion the survey established that the consumer received the implied message of Nuprin general superiority and not the explicit message of two tablet superiority. He reasoned: (1) that the interviewees had 4 opportunities to state the message of superiority related to two tablet dosage and only 4% did so; (2) that it is well known that people do not take explicit messages from commercials; (3) that consumers are oriented to a two tablet dose and therefore the explicit message of a two tablet dose is lost on the consumer. Also, he relied on certain Bristol Myers' studies that corroborated his conclusions regarding the two tablet orientation of consumers.

While my reaction to the commercials is not determinative,

> as finder of fact I am obligated to judge for myself whether the evidence of record establishes that *others* are likely to be misled or confused. In doing so, the court must, of course, rely on its own experience and understanding of human nature in drawing reasonable inferences about the reactions of consumers to the challenged advertising.

**2.** Transcript of second trial day, Friday, August 8, 1986, at page 169.

*McNeilab, supra,* 501 F.Supp. at 525 (emphasis in original).

Plaintiff's survey produced no direct evidence that Nuprin's two tablet superiority message was misunderstood by consumers. Indeed, the survey was designed to avoid a direct consumer response on this issue. Plaintiff's expert acknowledges that his first draft of the questionnaire contained the question, "How many tablets of each product were compared?" A direct answer to this question would not have left to inference or expert opinion the message derived by the consumer. The question was deleted at the suggestion of plaintiff's counsel, thus, precluding reliable direct responses by those interviewed.

■ While the responses relied upon by plaintiff raise the possibility that some of those interviewed received a message of general superiority, it is also possible, indeed probable, that the references to Nuprin superiority referred to the two tablet comparison. Accordingly, I am not persuaded that plaintiff has established by a preponderance of the evidence that the advertisement communicates an implied message of general Nuprin superiority. Thus, on this issue, there is no violation of the Lanham Act or common law standards of fair competition.

Plaintiff raises a second issue concerning the dosage regimen authorized by the FDA. Ibuprofen, when marketed over the counter, must have on every package:

*Directions.* Adults: Take one tablet every 4 to 6 hours while symptoms persist. If pain or fever does not respond to 1 tablet, 2 tablets may be used but do not exceed 6 tablets in 24 hours, unless directed by a doctor. The smallest effective dose should be used.

Plaintiff argues that the two tablet Nuprin claim of superiority should be enjoined as false and misleading because the directed first dose is limited to one tablet. The administrative history of the authorization process regarding Ibuprofen for over-the-counter sale discloses genuine concern by the FDA that the consumer use the smallest effective dose. The FDA label requirement reflects this concern. The trailer,

superimposed on the advertisement, advises the consumer, "Use only as directed. Take one Nuprin tablet. Two tablets may be used if pain does not respond." Thus, there is no doubt that one tablet is the directed first dose. However, this does not mean that a two tablet dose is unauthorized. Indeed, the FDA's required labeling states: "If pain or fever does not respond to 1 tablet, 2 tablets may be used, but do not exceed 6 tablets in 24 hours, unless directed by a doctor." Clearly, a two tablet dose is also authorized.

■ Plaintiff has offered no evidence of consumer deception caused by the advertisement. There is survey evidence that in response to question 8 of the survey, "Suppose you developed a headache and decided that you were going to take Nuprin. How many tablets would you take?" 18.2% stated one, 74.1% stated two, and 5.7% responded "whatever the package says". However, responses to this question were not restricted to the commercial. I am not persuaded that the responses reflect anything more than the two-tablet predisposition, recognized plaintiff's expert, of those who take over-the-counter pain relievers.

■ Because I find that two tablets is one of the authorized doses of Nuprin, I conclude that neither the Lanham Act nor the common law is violated by the commercial pointing out the superiority of Nuprin when taken in an authorized dose of two tablets.

Accordingly, judgment will be entered in favor of defendant and against plaintiff.