**FRUIT OF THE LOOM, INC. and Union Underwear Company, Inc., Plaintiffs,**

v.

**SARA LEE CORPORATION, d/b/a Hanes Knitwear, Defendant.**

No. 86 Civ. 6287 (RO).

United States District Court,
S.D. New York.

Aug. 28, 1986.

Amended Memorandum and Order
Oct. 9, 1987.

---

Nims, Howes, Collison & Isner, New York City, Oliver P. Howes, Jr., William R. Hansen, of counsel, for plaintiffs.

Townley & Updike, New York City, James B. Swire, John Paul Reiner, of counsel, for defendant.

OPINION AND ORDER

OWEN, District Judge.

Plaintiffs Fruit of the Loom and Union Underwear Co. move to enjoin a thirty-second television commercial. According to defendant Hanes (a division of Sara Lee Corporation), the commercial truthfully states that Fruit of the Loom T-shirts shrink thirty-eight percent more than Hanes T-shirts. Fruit of the Loom does not take issue with the shrinkage percentage relationship between the two T-shirts. Rather, it contends that the commercial is facially false and creates the misleading impression that (1) the Fruit of the Loom T-shirt *itself* shrinks thirty-eight percent after five washings, and (2) that this shrinkage factor is applicable to *all* Fruit of the Loom products. Plaintiffs thereupon bring this action pursuant to Section 43(a) of the Trademark Act of 1946 (the

Lanham Act), 15 U.S.C. 1125(a). Plaintiffs present a survey to the Court in support of their argument.

I have observed the commercial several times as well as studied the still photographs presented and the storyboard prepared from the commercial. As is stated below, I do not find the commercial to be facially false. Further, while as a single viewer I am substantially concerned that the commercial may have quite misleading aspects,[1] under the authorities as I understand them, my own view is not determinative as to the possibility of misleading—as opposed to facially false—advertising.[2]

Given what is before me, I am not sufficiently satisfied that the advertisement should be restrained. As to any facial falseness in the commercial, I note that the relative shrinkage rate communicated in the audio aspect of the commercial is not false; moreover, only T-shirts are specifically depicted in the commercial. Nor is anything else in the commercial facially false. To the extent plaintiffs also claim that the advertisement is misleading and attempt to support this with a survey, I cannot say that plaintiffs' survey is sufficiently persuasive. The survey's methodology is questionable. To begin, there are internal inconsistencies in the survey's results.[3] Further, given the margin of error in a survey of this type, I am not convinced

that the survey's results are significant. Given this, it would be improper for me to grant plaintiffs the extraordinary relief that they seek in this motion, which would obviously work an enormous dislocation of defendant's advertising strategy at this concededly critical time.

For the foregoing reasons, the motion is denied.

### AMENDED MEMORANDUM AND ORDER

On August 28, 1986, in an opinion, familiarity with which is presumed, I concluded on that record that there was no basis to grant a preliminary injunction restraining the Hanes T.V. commercial at issue in this action. I found it not facially false and, to the extent Fruit of the Loom asserted it was misleading, based upon a certain shopping mall survey in several cities, I did not find the survey sufficiently persuasive. Since the plaintiff chose to rely on the same survey for the trial and realizing that a hearing on that issue alone might be dispositive, I set the matter for trial on the single issue of the plaintiff's survey.

That mini-trial was held over two days, April 20–1, 1987. I heard two expert witnesses on behalf of the plaintiff and one expert witness on behalf of the defendant. I am of the same mind still on the crucial issue on whether the ad misleadingly com-

---

**1.** I am troubled by the following:

Fruit of the Loom, to deal with its particular shrinkage rate, makes a T-shirt that starts out an inch longer than Hanes, and therefore after the five washings that the commercial deals with is indeed only seven-eighths of an inch shorter.

The commercial does not mention any of this, and the visual presentation of the commercial is so structured as to at all times place the top of the Fruit of the Loom T-shirt higher than the top of the Hanes T-shirt. This conveys to the viewer, in my judgment, a Fruit of the Loom T-shirt that has in absolute terms an unacceptable shrinkage rate tending to leave one's midsection improperly covered after five washings. The commercial would, in my opinion, have been fairer had mention been made that Fruit of the Loom T-shirts start out longer and end up only a little bit shorter than Hanes T-shirts, and if the two T-shirts were truly placed side-by-side with the necks at the same level for the visual demonstration that is made on the screen.

**2.** *See, e.g., American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160, 165–66 (2d Cir.1978): where an advertising statement is acknowledged to be literally true but nevertheless has a tendency to mislead, the court "may conclude that the language is far from candid and would never pass muster under tests otherwise applied ... but the court's reaction is at best not determinative and at worst irrelevant. *The question in such cases is—what does the person to whom the advertisement is addressed find to be the message?"* (Emphasis in the original.) The court must examine the surveys conducted by the parties in relation to the action, considering both the methodological trustworthiness of the surveys and the survey results. *See, e.g., Procter & Gamble Co. v. Chesebrough–Pond's Inc.,* 747 F.2d 114, 119–20 (2d Cir.1984).

**3.** For example, the two percent confusion rate tabulated from question 8 severely undercuts the eighteen percent confusion rate tabulated from question 9. *See* Weilbacher Affidavit at Tables 3 and 4.

municated to an appreciable number of viewers that the *Fruit of the Loom* T-shirts shrank an absolute 38% after 5 washings. The structured question in plaintiff's survey giving this absolute shrinkage as an answer was selected 18% of the time,[1] whereas in the companion open-ended narrative *prior* question, it was so answered but 2% of the time.[2] Thus, one is inclined to conclude that to some extent some of those 18% so answered the structured question because it was a specifically proffered possible answer.

Further, from questioning defendant's expert on the trial, the following question which hovered over a number of pages, Tr. 214-23, was highly informative:

> Why did 56% of those questioned by use of a structured question in *defendant* Hanes survey[3] answer that the commercial involved "lasting longer" when the commercial did not say anything about "lasting longer" at all?

And finally, all the experts acknowledged that in mall testing circumstances, there is what is called in the trade a "noise factor" (a term used to mean "margin of error") which could be as high as 50% as to any given structured question.

Given this, can a Court say in these circumstances that a miscommunication to 18% of surveyed viewers developed by leading questions must be deemed misleading advertising and therefore enjoinable? I have no hesitation, in answering this question, to start with the premise that consumer surveys are recognized even today as an art and not a science. Thus, it is also necessarily recognized that a substantial number of those queried by structured written questions can come up with sincere answers as to what they believe they have taken from the commercial, which are, in fact, wrong.

Accordingly, concluding that the plaintiffs have failed to show that the commercial was facially false or actionably misleading, the action is dismissed with costs and disbursements to the defendant.

So ordered.

---

**1.** When the commercial say, "Hanes shrinks less than Fruit of the Loom—38 percent less", what do you understand this phrase to mean? Does it mean (SHOW CARD AND READ ALTERNATIVES):

    a. Both Hanes and Fruit of the Loom shrink after they are washed five times. Hanes shrinks *38 percent less* than Fruit of the Loom.

            b. Fruit of the Loom shrinks 38 percent from *its normal size.*

            c. Something else.

**2.** The commercial describes the results of clothes washing tests. What were the results of these tests?

**3.** Based on the commercial, with which of these statements you agree? (SHOW CARD AND READ ALTERNATIVES) (CIRCLE LETTER)

    a) The commercial does not say that Hanes would last longer than Fruit of the Loom.

            b) The commercial says that Hanes would last longer than Fruit of the Loom.

            c) Something else about which lasts longer. [56% of those questioned selected either b) or c).]