## BRISTOL–MYERS CO. v. FEDERAL TRADE COMMISSION.

No. 6049.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 17, 1950.

Decided Nov. 9, 1950.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case arises upon the petition of Bristol-Myers Company, a Delaware corporation, engaged in the manufacture and sale of Ipana tooth paste, to review and set aside a cease and desist order entered against it by the Federal Trade Commission pursuant to findings that in advertising the product it had engaged in unfair and deceptive acts or practices in violation of Sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C.A. §§ 45 and 52. The prohibitive provisions of the order, which are set out in full in the margin,[1] forbid advertisements which fall into two main categories: (1) advertisements that claim that twice as many dentists in the United States personally use Ipana as any other dentifrice; and that more dentists recommend Ipana for their patients than any other two dentifrices combined; (Sections 1(a) and 1(b) of the Order); and (2) advertisements which claim that Ipana possesses therapeutic and prophylactic qualities in that when used with massage it stimulates circulation and imparts health to the gums and prevents "Pink Tooth Brush" and aids in the treatment of its causes. (Sections 1(c), 1(d), 1(e) and 1(f) of the order).

Gilbert H. Weil, New York City, and T. Justin Moore, Richmond, Va. (Isaac W. Digges, New York City, John W. Riely, and Hunton, Williams, Anderson, Gay & Moore, all of Richmond, Va., on brief) for petitioner.

Donovan Divet, Special Attorney, Washington, D. C. (W. T. Kelley, General Counsel, James W. Cassedy, Associate General Counsel, and A. B. Hobbes, attorney Federal Trade Commission, all of Washington, D. C., on brief), for respondent.

I. The order under review requires the petitioner to cease and desist from:

"1. Disseminating, or causing to be disseminated, by means of the United States mails, or by any other means in commerce, as 'commerce' is defined in the Federal Trade Commission Act, any advertisement which represents, directly or by implication—

(a) That twice as many dentists in the United States personally use Ipana tooth paste as any other dentifrice, or that any greater proportion or number of dentists use said product than is the fact;

(b) That more dentists in the United States recommend Ipana tooth paste for use by their patients than any other two dentifrices combined, or that more dentists recommend said product than is the fact;

(c) That use of Ipana tooth paste with massage will prevent 'Pink Tooth Brush' or aid in the treatment of its causes;

(d) That Ipana tooth paste has any significant therapeutic value in the treatment of mouth, tooth or gum diseases;

(e) That modern or current diets, or soft well cooked foods, do not give the gums the exercise and stimulation they need, or that such diets or foods make the gums susceptible to trouble;

(f) That massage with Ipana tooth paste stimulates circulation in the gums, imparts firmness or health to the gums, or prevents gum trouble.

2. Disseminating, or causing to be disseminated, any advertisement, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of said product, which advertisement contains any of the representations prohibited in paragraph 1 hereof."

The Commission issued a complaint against the corporation and found upon substantial evidence that the corporation had represented in advertisements in the first category (1) that according to a national survey conducted in 1940 among thousands of dentists twice as many dentists personally use Ipana tooth paste as any other dentifrice; and (2) that more dentists recommend Ipana for their patients' daily use than the next two dentifrices combined. These advertisements were based upon the answers to a questionnaire sent by the corporation in 1940 to each of 10,000 dentists out of 66,000 in the United States picked at random from the subscribers to two dental magazines. The questionnaires asked the following questions: (1) What dentifrice do you personally use most often?, and (2) What dentifrice do you most often recommend to your patients? In reply 1983 questionnaires were received which contained 2467 replies to the first and 2364 replies to the second question. The replies exceeded the questionnaires in number because some dentists named more than one product in their answers. Of the 2467 replies to the first question 621 dentists replied that they used Ipana most often, whereas the four nearest competing products were preferred by 258, 189, 144 and 128 dentists respectively. In answer to the second question 461 dentists indicated that they most often recommended Ipana to their patients while the four nearest competing products were preferred by 195, 125, 106 and 94 dentists respectively. Of the 461 dentists who recommended Ipana to their patients 413 used it themselves and 48 did not use it. Other surveys conducted in 1941 and 1944 revealed substantially similar situations.

Based upon the results of the survey, the corporation published advertisements from which the casual reader would reasonably infer that careful inquiry amongst the members of the dentist profession had disclosed that a large majority of the dentists in this country not only used Ipana themselves but recommended it to their patients. Typical of these advertisements were the following:

"Do you know that the 1940 National survey recently conducted among thousands of dentists revealed the following remarkable fact—Twice as many dentists personally use Ipana Tooth Paste as any other dentifrice preparation.

"Dentists choose Ipana for Personal use 2 to 1 over any other dentifrice.

" * * * In a recent nationwide survey, more dentists said they recommended Ipana for their patients' daily use than the next two dentifrices combined. Which should help convince you * * * that for healthier gums, brighter teeth and a more attractive smile, you should begin now to massage with Ipana Tooth Paste.

"That is why so many dentists recommend massage with Ipana.

"So many dentists suggest the helpful stimulation of Ipana and massage."

■ We are of the opinion that these sweeping statements were not justified by the answers to the questionnaire and that in consequence, as the Board found, the advertisements were misleading and likely to deceive the general public. Certainly the average reader would not infer that the positive proof in the hands of the advertiser disclosed the personal preference of only 621 dentists and the customary recommendation of tooth paste to patients by only 461 dentists out of the 66,000 dentists in the United States, or that less than 20 per cent. of those who had been questioned had taken the trouble to reply, so that the use and practice of the remaining 80 per cent. were unknown. It may well be that an accurate estimate of public opinion or practice can be obtained by a sampling process or survey, but the record is devoid of information on this subject and in the absence of the proof of the scientific principles, if any, which underlie the practice, we must rely upon the impression which the advertisements would be likely to make upon the mind of a man of ordinary intelligence. This is not to express the opinion that all advertisements based upon surveys must be barred, but merely that the information in the possession of the manufacturer in this case was insufficient to

support its advertisements, and hence that the action taken by the Commission in this respect was within its authority.

The remaining parts of the order were passed in respect to advertisements which represented to the public that the modern American diet consists of such soft well cooked foods that the gums do not get the exercise and stimulation which they need, and that massage with Ipana will provide such exercise and stimulation, and will make the gums firm and healthy, guard against Pink Tooth Brush, a bleeding of the gums sometimes due to disease, and prevent gum trouble generally.[2] Sections 1(c) to 1(f) of the order were designed to prevent the dissemination of these statements. The order was based upon findings of the Commission that the preponderant weight of qualified dental opinion establishes the following facts: It is immaterial to the health of the gums whether the diet of a person is soft or coarse, and the modern American diet provides sufficient gum stimulation. The term "massage", as used by dentists, means a careful downward stroking or squeezing pressure applied to a quarter inch of the gum margin and teeth. The term "massage", as used in the manufacturer's advertisements, means to the general public a horizontal, vertical or rotary scrubbing of the teeth and the gums with the brush, or a similar rubbing with the finger. Such un-

instructed massage either with or without Ipana or any other tooth paste does not stimulate circulation in the gums, impart firmness thereto, or prevent gum trouble in general or pink tooth brush in particular. Even carefully instructed and properly performed massage is not needed in a mouth free from disease, and a layman is unable to ascertain whether or not he is in need of massage. Ipana tooth paste is a cleansing agent only, without therapeutic value, and possesses prophylactic value only insofar as it cleanses.

The manufacturer contends that these findings are not supported by substantial evidence insofar as they state that the use of Ipana in connection with massage has no beneficial effect. The testimony in support of the findings was given by four expert dentists who were distinguished in their profession and had published numerous articles in leading dental and medical journals. Two of them had published textbooks on dentistry. In opposition the petitioner produced one witness who had been educated in medicine, had been a medical director in industry and in the army, and was employed by the petitioner at the time of the trial. His testimony differed in material points from that of the Commission's expert.

▮▮▮ It is not denied that the testimony of the Commission's experts supported its findings, but it is contended that it did

2. Typical of these advertisements were the following:

"Guard against 'Pink Tooth Brush' with the help of Ipana and Massage—It may not mean serious trouble, but find out. More than likely it is a warning of neglected gums, soft, flabby, underworked. And like thousands of dentists your dentist may suggest 'the healthful stimulation of Ipana massage'.

"That is why the daily use of Ipana and Massage—to help guard against 'Pink Tooth Brush'.

"* * * foods we eat nowadays do not give our gums the work they need to keep them firm and healthy—so they often become soft and susceptible to trouble. That's why so many dentists suggest massage with Ipana Toothpaste.

"That's why so many dentists say—Give your gums the healthful stimulation of Ipana Toothpaste—and massage * * *

it gives your gums the kind of stimulation they need to help guard against gum trouble.

"* * * but when used with massage Ipana helps to give our gums the exercise and stimulation they fail to get from the soft, creamy foods we eat—a stimulation they need to help guard against gum trouble.

"For when you massage with Ipana you can actually feel its stimulating effect upon your gum tissues as lazy gums start to waken and circulation speeds up. And that helps bring greater health to your gums and consequently more radiance to your smile.

"You'll notice an invigorating 'tang'— exclusive with Ipana and massage. That tells you circulation is speeding up within the gums—helping gums to gain new firmness and new strength."

62

not constitute substantial evidence within the meaning of Section 5(c) of the Federal Trade Commission Act, 15 U.S.C.A. § 45 (c), and Section 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), because each of the witnesses based his opinion upon his clinical experience without experimenting with Ipana, and without making scientifically controlled experiments which the witnesses admitted were necessary for the acquisition of positive knowledge as distinguished from opinion. The witnesses, however, were in possession of the formula of Ipana which contained familiar ingredients concerning which they were competent to testify; and, in saying that their opinions were not based on scientifically controlled experiments, they did not take the position that their opinions, based upon general clinical experience, were valueless. It does not appear in this case that either the producer of the goods or any one else has made a technically precise or exhaustive scientific investigation. The Commission based its findings upon the opinions of persons qualified in the field in much the same manner as the manufacturer purports to have acted in describing the beneficial qualities of his product to the public. In our opinion the Commission was justified in giving preference to the testimony of the experts who supported the allegations of the complaint and who, so far as the evidence shows, were the persons best qualified in the field to form a trustworthy judgment upon the matters under investigation. Opinion evidence based on the general medical and pharmacological knowledge of qualified experts has often been held to constitute substantial evidence, even if the experts have had no personal experience with the product. Goodwin v. U.S., 6 Cir., 2 F.2d 200, 201; Dr. W. B. Caldwell, Inc., v. F. T. C., 7 Cir., 111 F.2d 889, 891; and this has been done even where witnesses who had personally observed the effects of the product testified to the contrary. Justin Haynes & Co. v. F. T. C., 2 Cir., 105 F.2d 988, 989; Neff v. F. T. C., 4 Cir., 117 F.2d 495, 497; J. E. Todd, Inc., v. F. T. C., 79 U.S.App.D.C. 288, 145 F.2d 858; John J. Fulton Co. v. F. T. C., 9 Cir., 130 F.2d 85, 86; cf. Kid-

der Oil Co. v. F. T. C., 7 Cir., 117 F.2d 892, 899, where the evidence was found to be so speculative and uncertain that findings of the Commission were set aside. Conflicts in testimony are to be resolved by the Commission and not by us whose function is limited to determining whether upon a review of the whole record it appears that the Commission's findings are supported by substantial evidence. The weight to be given to the facts proved and the inferences to be drawn from them are for the Commission to determine, not the courts. Corn Products Refining Co. v. F. T. C., 324 U.S. 726, 739, 65 S.Ct. 961, 89 L.Ed. 1320.

A judgment affirming the Commission's order will be issued.

Affirmed.